# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2633

_____

Thomas E. Ballard,       *
      *
     Plaintiff/Appellant,       *
      *    Appeal from the United States
     v.       *    District Court for the Eastern
      *    District of Missouri
Robert E. Rubin, Secretary       *
of the Treasury,       *
      *
     Defendant/Appellee..       *

_____

Submitted:  January 15, 2002
Filed:  March 29, 2002

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and OBERDORFER,[2] District Judge.

_____

OBERDORFER, District Judge.

Thomas Ballard appeals an award of summary judgment on his claim that his former employer, the Internal Revenue Service ("IRS"), violated the Rehabilitation

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

Act by failing to accommodate his disability. After review, we conclude that Ballard never timely requested such accommodation, expressly or <u>de facto</u>, and thus the IRS was never obligated to provide it. We therefore affirm the district court.

## I.

Ballard was employed by the IRS from 1967 until his retirement on January 1, 1999. After 1985 until his retirement he worked as a GS-14 large-case manager. As a result of polio contracted during his childhood, Ballard wore leg braces and used crutches during the time the IRS employed him. He also suffered pain in his upper extremities. The parties agree that at all relevant times Ballard was disabled for purposes of the Rehabilitation Act.

On October 8, 1991, Ballard sent a memo to his manager withdrawing from the IRS's Management Achievement Program ("MAP program"), in which he had participated for some period of his employment. The MAP program is designed to plan different assignments for participating employees to improve their chances for promotion. Ballard's memo stated that he had been advised that his credentials would be enhanced if he accepted certain assignments involving additional travel that he did not think feasible in light of his disability. He stated, "In my view, these assignments will require additional travel. In view of my current physical limitations, I do not believe it is in my best interests to continue to pursue a higher level position. I am therefore requesting that you remove my name from the MAP program."

Ballard attached to his memo two letters from his doctor, which he described as "self explanatory." The first contained a recommendation that Ballard be allowed to use a "light weight wheelchair" to reduce his pain and enable him to be more mobile. The second letter also contained a recommendation that Ballard be allowed to use a wheelchair and further that "he curtail his traveling and/or travel with another person who can assist him when needed."

Ballard also wrote in his memo, "I am not now requesting any special considerations. I intend to continue to perform my assigned responsibilities to the best of my abilities. However, I believe it is to [sic] appropriate for me to take [my doctor's] recommendations into account if I am to have any future." He continued, "I will endeavor to continue to accomplish my current responsibilities to the best of my ability without special considerations. However, I am requesting that my PMRS objectives take my physical limitations into account before requiring me to serve on out of town task forces." There is no evidence that the IRS made any adjustments to Ballard's job requirements following its receipt of his memo and its attachments.

Following his withdrawal from the MAP program, Ballard applied but was not selected for two promotions. The first was in 1994 as a GS-15 Branch Chief in the IRS's St. Louis office. On August 26, 1994, Ballard filed an EEO complaint alleging that he was not selected for this position because of his disability. Ballard attached a copy of his 1991 memo to the complaint and indicated that he was denied participation in the MAP program because the IRS would not accommodate his disability. He stated, "I provided the attached memorandum to my manager believing that he would provide me the accommodations suggested by my doctor with regard to travel particularly due to the circumstances surrounding the need to restrict my travel. . . . [I] believed the IRS would offer to accommodate the travel assistance as recommended by my physician. I was evidently incorrect as I was promptly removed from the MAP program without hesitation." In 1997, Ballard was not selected for an Acting Branch Chief assignment in St. Louis. No EEO-related action appears to have followed.

On December 8, 1998, seven IRS employees, including Ballard, filed a twelve-count complaint against Robert Rubin, the Secretary of the Treasury, alleging various types of discrimination by the IRS. Ballard brought three claims: hostile work environment, disability discrimination, and failure to accommodate. The district court denied the plaintiffs' motion for partial summary judgment and granted in part

and denied in part the defendant's cross-motion for summary judgment, including awarding summary judgment to the defendant on all three of Ballard's claims.

## II.

"We review a grant of summary judgment de novo, affirming the decision of the district court only if no genuine issue of material fact exists, entitling the moving party to judgment as a matter of law." Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 657 (8th Cir. 2001) (citing Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134 (8th Cir. 1999) (en banc)). "In considering whether summary judgment was appropriate, we view all evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his favor." Id. (citing Kiel, 169 F.3d at 1134).

## III.

Ballard's sole claim on appeal is that the IRS committed unlawful employment discrimination under the Rehabilitation Act, 29 U.S.C. § 701 et seq., by failing to provide reasonable accommodations for his disability. As this Court has held in the context of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.,[3] "An employer commits unlawful discrimination . . . if the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951 (8th Cir. 1999) (quoting 42 U.S.C.

---

[3]This Court has held that cases interpreting the ADA and the Rehabilitation Act are interchangeable. See, e.g., Allison v. Department of Corrections, 94 F.3d 494, 497 (8th Cir. 1996) ("Because the same basic standards and definitions are used under [the ADA and the Rehabilitation Act], cases interpreting either are applicable and interchangeable for purposes of our discussion.") (citations omitted).

§ 12112(b)(5)(A)).  This Court observed in Fjellestad, where the employee truly and affirmatively requested accommodation, that the scope of the employer's obligation in this regard is determined through an "'informal, interactive process'" between the employer and the employee, identifying the limitations arising from the disability and potential reasonable accommodations that could overcome those limitations.  Id. (quoting 29 C.F.R. § 1630.2(o)(3)).

To show that an employer failed to participate in this interactive process, the employee must demonstrate that: "'1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'"  Id. at 952 (quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 165 (3d Cir. 1999)).  The mere failure of an employer to engage in the interactive process does not give rise to per se liability, although for summary judgment purposes such failure is considered prima facie evidence that the employer may be acting in bad faith.  Id.

The primary issue in this case is whether Ballard "requested accommodations or assistance" for his disability, which is a "predicate requirement" for the initiation of the interactive process.  Id.  Ballard offers two pieces of evidence that he claims satisfy this requirement: 1) his 1991 memo, by which he withdrew from the MAP program and the attached letters from his doctor recommending that he be allowed to use a wheelchair and curtail his travel schedule, and 2) his 1994 EEO complaint, to which his 1991 memorandum was attached and which characterized that memo as a request for accommodation.

The district court determined that Ballard had not established that he made a timely request for accommodation.  The court stated that Ballard's claim was untimely to the extent it was based on his 1991 memo because he failed to bring it

-5-

within the applicable limitations period. (Order at 21.) Noting that the Rehabilitation Act lacked its own statute of limitations, the court borrowed Missouri's five-year limitations period for personal injury actions and concluded that a "request made more than nine years ago cannot be the basis for a failure-to-accommodate claim." (Id.)  The district court also stated that it could not find "any language" in Ballard's 1994 EEO complaint "that can be construed as a request for accommodation."  (Id. at 21-22.)  The district court did not address the other elements of Ballard's claim.

On appeal, Ballard contends that even if neither his 1991 memo nor his 1994 EEO complaint contained an express request for accommodation, together they constitute a de facto request for accommodation because their content put the IRS on notice that Ballard desired particular accommodations for his disability – namely, a wheelchair and either relief from, or assistance with respect to, business travel.  This circuit has not addressed what specific form a request for accommodation must take in order to trigger an employer's obligation to initiate the interactive process.  Indeed, the issue was not presented in Fjellestad or other cases where the plaintiffs – who suffered from physical, and thus presumably obvious, disabilities – clearly requested accommodation. Compare Fjellestad, 188 F.3d at 952 (reversing a grant of summary judgment to the employer where the employee, who sustained various physical injuries in a car accident, wrote a grievance letter to her employer in which she stated, "I request that I be reasonably accommodated."); Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1021 (8th Cir. 2000) (reversing a grant of summary judgment to the employer where the employee, who suffered from bilateral carpal tunnel syndrome, "specifically requested assistance in locating an available position within the company" that would accommodate her physical limitations), with Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1217 (8th Cir. 1999) (affirming a grant of summary judgment to the employer where the plaintiff, who suffered from multiple sclerosis, "never advised [her employer] she needed additional accommodation, much less what accommodation specific to her position and workplace was needed").

Other courts have held – usually in the context of mental disabilities – that the absence of an express and unequivocal request is not necessarily fatal to a failure-to-accommodate claim.[4]  For example, in Taylor v. Phoenixville School District, 174 F.3d 142 (3d Cir. 1999), the Third Circuit stated, "The EEOC's manual makes clear . . . that while the notice does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability.  In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability."  Id. at 158-59.  The Third Circuit continued,

_____

[4]Ballard cites two of these cases, both of which involved plaintiffs with mental disabilities.  See Bultemeyer v. Fort Wayne Community Schs., 100 F.3d 1281 (7th Cir. 1996); Walsted v. Woodbury County, 113 F. Supp. 2d 1318 (N.D. Ia. 2000).  In Bultemeyer, the Seventh Circuit held that "properly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say 'I want a reasonable accommodation,' particularly when the employee has a mental illness."  Bultemeyer, 100 F.3d at 1285.  The Seventh Circuit continued, "The employer has to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help."  Id.
     In Walsted, the district court denied summary judgment to the employer on the employee's failure-to-accommodate claim, finding that fact issues existed as to each of the four factors in Fjellestad.  See Walsted, 113 F. Supp. 2d at 1335-36. The plaintiff in Walsted, whose IQ score placed her "in the borderline mentally retarded range," id. at 1322, had not expressly requested accommodation.  The court concluded, however, that this was not fatal to her claim, stating that "'if an employee's disability and the need to accommodate it are obvious, an employee is not required to expressly request reasonable accommodation.'"  Id. at 1336 (quoting Norris v. Allied-Sysco Food Serv., 948 F. Supp. 1418, 1436 (N.D. Cal. 1996)).  The court cited deposition testimony that it was "common knowledge" among other employees that the plaintiff "had a significant learning disability, and that she could not read and write."  Id.  In light of such evidence, the court found that the employer was obligated to initiate the interactive process despite the absence of an express request for accommodation.  Id.  For reasons that are explained below, Ballard's case is distinguishable from Bultemeyer and Walsted.

-7-

"What matters . . . are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." Id. at 159.

In this case, we conclude that a reasonable trier of fact would find that Ballard did not provide the IRS with "enough information that, under the circumstances, [it] can be fairly said to know" that Ballard sought accommodation for his disability. We note first that Ballard's 1991 memo is arguably ambiguous on the issue. That memo contains some indication that Ballard affirmatively did not want accommodation for his disability. He wrote, "I am not now requesting any special considerations. I intend to continue to perform my assigned responsibilities to the best of my abilities." He later added, "I will endeavor to continue to accomplish my current responsibilities to the best of my ability without special considerations."

Despite this strong language, there is also some indication in his 1991 memo that Ballard sought accommodations at least with respect to his job's travel requirements. Ballard stated that it was appropriate for him to take into account his doctor's recommendations, which were attached to his memo and included recommendations that he "curtail his traveling and/or travel with another person who can assist him when needed." Ballard also wrote, "I am requesting that my PMRS objectives take my physical limitations into account befor[e] requiring me to serve on out of town task forces inasmuch as I am conceding that I am no longer promotable."

While these somewhat contradictory statements could be viewed as creating a triable issue of fact as to whether Ballard requested reasonable accommodation in 1991, Ballard's failure-to-accommodate claim still must fail on summary judgment to the extent it is based on his 1991 memo because it was not timely. As the district court observed, the Rehabilitation Act does not contain its own statute of limitations.

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) (construing a lawsuit brought pursuant to 42 U.S.C. § 1983 as a personal injury action and thus applying the state's statute of limitations for personal injury lawsuits).

This circuit has not applied this practice in a published decision to a claim brought pursuant to the Rehabilitation Act, but those courts that have generally held that such a lawsuit, as a federal civil rights claim, is a personal injury action subject to the state's statute of limitations for such lawsuits. See, e.g., Wolsky v. Medical College of Hampton Roads, 1 F.3d 222, 224 (4th Cir. 1993) ("Rehabilitation Act claims are injuries to individuals and analogous to personal injury claims."); Cheeney v. Highland Community College, 15 F.3d 79, 81 (7th Cir. 1994) ("[I]n borrowing statutes of limitations for federal civil rights cases, the courts should look to state statutes governing personal injury suits."). This conclusion is consistent with this circuit's precedent involving other federal civil rights statutes. See, e.g., Egerdahl v. Hibbing Community College, 72 F.3d 615, 618 (8th Cir. 1995) (adopting the Supreme Court's reasoning in Wilson and applying the state's statute of limitations for personal injury actions to claims of race and gender discrimination brought pursuant to Title VI and Title IX of the Civil Rights Act).

Applying this practice here, the most generous statute of limitations for a personal injury claim under Missouri law is five years. See Mo. Ann. Stat. § 516.120(4) (setting a limitations period of five years for "[a]n action . . . for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated"). Ballard filed his complaint alleging a failure to accommodate in December 1998, over seven years after he claims to have first requested accommodation for his disability. Therefore, even if Ballard's 1991 memo

constituted a request for accommodation, a claim based on that communication is untimely.

Having noted the ambiguities in the 1991 memo, the question becomes whether Ballard's 1994 EEO complaint either contained a request for accommodation or sufficiently reiterated the arguable request he made in the 1991 memo. We conclude that a reasonable trier of fact could not find that the 1994 complaint constituted a formal or even de facto request for accommodation. The 1994 complaint, in contrast to the 1991 memo, was neither on its face nor in essence about reasonable accommodation. As the district court found, that complaint by its terms did not seek accommodation. Its subject was Ballard's allegation that his employer failed to promote him in 1994 because of his disability, not that his employer had failed to accommodate his disability.

Ballard argues that his 1994 EEO complaint nonetheless put the IRS on notice that he sought accommodation for his disability. We conclude that no reasonable trier of fact would agree. Ballard attached his 1991 memo to the complaint and characterized it as a request for accommodation, stating his beliefs that his manager "would provide me the accommodations suggested by my doctor with regard to travel particularly due to the circumstances surrounding the need to restrict my travel" and that "the IRS would offer to accommodate the travel assistance as recommended by my physician." In light of the summary judgment evidence, however, this language does not convert the 1994 EEO complaint into a request for accommodation, even when the ambiguities in the 1991 memo discussed above are construed in Ballard's favor. Ballard's disability – which required him to wear leg braces and use crutches – was obvious. This would have presumably put the IRS on notice at least that Ballard had physical limitations.

Other record evidence, however, strongly suggests that Ballard nonetheless did not want accommodation. Ballard's counselor in the MAP program testified in a

deposition that Ballard "liked to be fiercely independent and attempted to function without reference to, without leaning if you will, on his handicap or physical disabilities in any fashion." (Defendant's Statement of Uncontroverted Material Facts at 2-3 (citing Balas Dep. at 15)). Furthermore, given his demonstrated ability to perform a cerebral IRS job, Ballard, unlike the mentally handicapped plaintiffs in cases where courts did not require an express request for accommodation, see supra note 4, knew how to make such a request. Therefore, we conclude that no reasonable trier of fact could read Ballard's 1994 EEO complaint, even when considered together with his 1991 memo, as constituting a formal or de facto request for accommodation that placed the IRS on notice sufficient to trigger its responsibilities under the Rehabilitation Act.[5]

## IV.

For the foregoing reasons, we conclude that Ballard never requested accommodation for his disability, and the IRS thus did not violate the Rehabilitation Act by not engaging in an interactive process with Ballard. Accordingly, we affirm the district court's grant of summary judgment to Ballard's employer.[6]

---

[5]Even if we were to conclude that Ballard had requested an accommodation, that would not end the matter. Because the district court disposed of Ballard's failure-to-accommodate claim on the basis that he did not request accommodation, it made no determinations regarding the other unresolved elements of that claim, such as whether the accommodations recommended by Ballard's physician were reasonable. Furthermore, if it were concluded that the IRS had failed to fulfill its obligation to accommodate Ballard's disability, the fact that Ballard retired from his position with the IRS would complicate any attempt to provide a remedy, an issue that Ballard's counsel conceded at oral argument was "difficult." Nothing in this opinion should be construed as expressing any view on these unresolved issues.

[6]We note that the IRS may also have been entitled to summary judgment on Ballard's failure-to-accommodate claim on the basis of exhaustion of administrative remedies, a possibility noted but not explained by the IRS and not addressed by

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

Ballard. "Administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer." McAlister v. Secretary of Dep't of Health and Human Servs., 900 F.2d 157, 158 (8th Cir. 1990) (citing Morgan v. U.S. Postal Serv., 798 F.2d 1162 (8th Cir. 1986)). The Supreme Court has held, however, "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Generally, "[t]he defendant has the burden of proving the affirmative defense of failure to exhaust administrative remedies." Young v. National Ctr. for Health Servs. Research, 828 F.2d 235, 238 (4th Cir. 1987) (citing Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985)).

In this case, Ballard appears only to have filed an EEO complaint regarding his non-selection for a promotion in 1994, and he does not appear to have pursued any administrative action with respect to an alleged failure to accommodate. The IRS's answer to the complaint filed by Ballard and the six other plaintiffs asserted as an affirmative defense that "[s]ome or all of Plaintiffs' claims are barred because of failure to exhaust administrative remedies." In its motion for summary judgment, however, the IRS advanced exhaustion arguments with respect to several of the plaintiffs but not Ballard. Therefore, it is unclear whether the IRS should be considered to have waived this argument. While such circumstances might ordinarily warrant a remand to the district court to determine whether Ballard exhausted his administrative remedies and whether his employer waived the right to proceed on this argument, in light of our conclusion that Ballard never requested accommodation we need not pursue the issue.

-12-