UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RONALD W. PARKINSON,
       *Plaintiff-Appellant,*

v.

ANNE ARUNDEL MEDICAL CENTER;
BONNIE POZNANSKI; CYNTHIA WILSON,
       *Defendants-Appellees.*

No. 02-2000

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-01-1628-JFM)

Argued: September 24, 2003

Decided: October 31, 2003

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Robin R. Cockey, COCKEY, BRENNAN &
MALONEY, P.C., Salisbury, Maryland, for Appellant. Paul M.
Lusky, KRUCHKO & FRIES, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant, Ronald W. Parkinson, appeals from the district court's grant of summary judgment in favor of his former employer, Anne Arundel Medical Center ("AAMC"), and two of the center's employees, Bonnie Poznanski and Cynthia Wilson (collectively, "appellees"), in his civil action alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. The district court concluded that Parkinson did not establish that he was disabled as defined by the ADA, thus defeating his claim for failure to provide reasonable accommodation. The court also concluded that Parkinson failed to establish a prima facie case of retaliation under the ADA.* Finding no reversible error, we now affirm.

I.

Parkinson began work at AAMC in 1974 as a Radiology Technician, and by 1995 he had risen to Chief of the Ultrasound Department. In June 1998, Parkinson suffered a heart attack. Although he recovered, Parkinson claims he was prohibited from doing strenuous exercise or lifting heavy weights (activities that he previously enjoyed), and was permitted to return to work only subject to the restrictions from his doctor that he avoid stress and not work overtime. When he returned to work in September 1998 after his convalescence, he claims that he communicated his restriction regarding overtime to AAMC. He claims that, as a result, he was taken off "on-call" status and saw his average hours per week decline from about 70 to about 40. Nevertheless, he contends, his supervisors pressed him to accept overtime and criticized him when he refused it — although he admits he occasionally worked overtime.

According to Parkinson, one such example occurred on December 15, 1999. On that date, Poznanski, who was the manager of the Radiology Department, insisted that Parkinson work overtime to perform

---

*Parkinson also brought common law claims, which the district court declined to exercise supplemental jurisdiction over and dismissed without prejudice. Parkinson subsequently refiled those claims in state court.

a carotid ultrasound test. When Parkinson refused, Poznanski suspended him for one day without pay. Thereafter, Parkinson claims, he was demoted from Chief to senior ultrasound technician.

Parkinson asserted in his suit that AAMC refused to honor his request not to work overtime after his heart attack, thereby failing to reasonably accommodate the limitations imposed by his disability of severe coronary artery disease. He also claimed that AAMC engaged in retaliatory discrimination under the ADA when it suspended and allegedly demoted him following his request for accommodation. In a well-reasoned opinion, the district court granted summary judgment in favor of appellees on both claims. *See Parkinson* v. *Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511 (D. Md. 2002).

## II.

The district court concluded that Parkinson's claim for failure to provide reasonable accommodation was defeated since Parkinson could not establish, as a threshold matter, that he had a "disability." The court reasoned that Parkinson had not established either that his restrictions on work or on physical activity made his impairment an actual disability under the ADA, or that appellees regarded him as having such a disability during the relevant period.

Parkinson also claimed that even if he was not disabled as defined by the ADA, appellees still violated the prohibition on retaliation set forth in 42 U.S.C. § 12203. To establish a prima facie case of retaliation under the ADA, a plaintiff must show that he engaged in protected activity; that his employer took adverse action against him; and that there existed a causal connection between the protected activity and the adverse action. *Rhoads* v. *FDIC*, 257 F.3d 373, 392 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002). The district court held that even if Parkinson's request not to work overtime when he returned from his heart attack in September 1998 was protected activity, he failed to demonstrate that his alleged demotion was an adverse employment action or that a causal connection existed between that protected activity and his suspension.

The district court did not specifically address the question of whether Parkinson engaged in protected activity when he refused to

work overtime on December 15, 1999. To show that he was engaged in protected activity, Parkinson had to prove that he held a reasonable, good-faith belief that the practice he opposed that day — appellees' requirement that he stay after his shift to complete the ultrasound procedure — was an unlawful refusal to provide reasonable accommodation to limitations imposed by his alleged disability. *See Peters* v. *Jenney*, 327 F.3d 307, 320-321 (4th Cir. 2003); *Rhoads*, 257 F.3d at 387 n.11 (stating as a element of a claim for failure to accommodate that the employer must have "refused" to make reasonable accommodation). But before he could establish that appellees refused to provide reasonable accommodation in violation of the ADA, Parkinson *first* must have, at minimum, communicated to appellees a wish for accommodation of his disability. *See Ballard* v. *Rubin*, 284 F.3d 957, 960-962 (8th Cir. 2002). Of course, a request for accommodation need not, in all cases, "be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation.'" *Taylor* v. *Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). But Parkinson was capable of communicating his wish for accommodation, and he could not have reasonably believed that his earlier request not to work overtime remained outstanding by the time of his December 1999 refusal. Appellees presented unrebutted evidence that Parkinson worked overtime on numerous occasions between September 1998 and December 1999, and even Parkinson admitted that he worked some overtime. *See* J.A. 220-21; Reply Br. at 3. Therefore, for Parkinson to have engaged in protected activity, he must have reasonably believed, at least, that his actions and statements in refusing to work overtime that day "ma[de] clear" to appellees "that [he] want[ed] *assistance for his . . . disability*." *Taylor*, 184 F.3d at 313 (emphasis added).

Even viewing the evidence in the light most favorable to Parkinson, however, he could not have reasonably believed that appellees understood him to have requested accommodation for his disability when he refused to stay after his shift ended that day. As such, he cannot make out a *prima facie* case of retaliation for any actions taken by appellees because of his refusal. Parkinson admitted in his deposition testimony that, when refusing Poznanski's order to work overtime to perform the ultrasound procedure, he "told [Poznanski] . . . [he] had a doctor's appointment at 4:00 and that [another employee could] do it." J.A. 59. (He later testified that his appointment was with

a dentist. J.A. 65.) Parkinson then repeatedly told Poznanski that he had not worked overtime since his first heart attack, J.A. 59-61. However, such statements not only failed to link explicitly his refusal to stay to limitations imposed by his impairment, but were also, and more importantly, plainly contradicted by the record. *See supra* at 4-5.

Nothing in Parkinson's statements or actions in refusing to work overtime that day would have reasonably led appellees to understand that he desired accommodation of limitations imposed by his coronary artery disease. In fact, it would have been far more reasonable for appellees to have understood his request not to work overtime to have been made for an entirely unrelated reason: so that he would not miss an appointment he had scheduled for that afternoon. It follows, then, that it was objectively unreasonable for Parkinson to have believed that, in requiring him to work overtime that day over his protests, appellees refused to provide reasonable accommodation *after he had made a request for accommodation of his disability*, and thereby violated the ADA. Moreover, because Parkinson's unprotected activity that day was almost certainly the cause of his suspension, we are confident that the district court reached the correct conclusion that there was no causal connection between Parkinson's suspension and his request not to work overtime made over a year earlier.

Finally, to the extent that Parkinson did make out a *prima facie* case of retaliation as to his suspension, the district court concluded that he failed to rebut, by showing pretext, appellees' legitimate non-retaliatory reasons offered for that action. This conclusion by the district court was also correct. The job description for Parkinson's position, as well as AAMC's employment handbook and written overtime policy, collectively establish that Parkinson was required to work overtime when his superiors requested he do so, and the possibility that he could be disciplined if he refused.

### *CONCLUSION*

Upon review of the parties' briefs and oral arguments, and upon our consideration, we affirm the district court's judgment for the reasons stated by that court, except to the extent that those reasons differ from the reasoning presented above.

*AFFIRMED*