# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2419
_____

Bonnie Dick

*Plaintiff - Appellant*

v.

Dickinson State University

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of North Dakota - Bismarck
_____

Submitted: March 16, 2016
Filed: June 23, 2016
_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.
_____

BEAM, Circuit Judge.

Bonnie Dick appeals the district court's[1] grant of summary judgment in favor of her employer, Dickinson State University (DSU), on her Rehabilitation Act claim. In granting summary judgment, the district court held that Dick suffered no adverse

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

employment action by being exposed to the floor-stripping and -waxing products iShine and LOE Stripper (the Products) while employed as a custodian at DSU. For the reasons discussed below, we affirm.

## I. BACKGROUND

DSU hired Dick as a custodian in October 2004. In 2006, Dick suffered two seizures believed to have been caused in part by her use of the Products in poorly ventilated areas at work. When she returned to work after recovering from the seizures, she assisted the administrative secretary with routine filing and copying. Eventually there was not enough work, and she was placed on leave. Dick then asked to return to work as a custodian but asked to be excused from using the Products. Her request was granted, and she was relieved of all floor-stripping and -waxing responsibilities for the remainder of her employment. Additionally, the Products were not used in her presence, and DSU provided Dick with a respirator that she refused to wear. It was DSU's goal "to eliminate Dick's exposure to [the Products] during the application process." At this time, Dick had not requested an accommodation in regard to other products or neurotoxins.

In January 2007, DSU granted a request from Dick to be transferred to the library, which had less vinyl flooring. In 2008, DSU again allowed Dick to transfer to a new location, May Hall, which was mostly carpeted. Despite her transfers, Dick occasionally came into contact with residual smells from areas with floors that had to be stripped and waxed. Dick lists several occasions when she was exposed to the Products after requesting the accommodation: in December 2006 she went into a classroom that had been waxed the night before; in 2007 a bathroom and classroom in the basement of the library were waxed but she avoided the area; during the summer of 2007 spray was used on steps in the library and she had to hold her breath; several times she was forced to pass through areas that had been waxed; and in October 2011 a coworker who was using the Products asked Dick whether he was

waxing an area properly. Dick never sought medical attention or reported any of the above-listed incidents. In fact, she did not realize at the time of the exposure that the Products were bothering her. Nonetheless, Dick now contends that she suffered various physical, neurological, and cognitive side effects from repeated exposure to the Products during her employment at DSU.

In 2011, Dick filed an internal grievance for harassment, hostile work environment, and discrimination. An outside investigation determined Dick's claims were baseless. In January 2012, Dick's eyes began to burn after encountering fungicide used in a room at DSU. She then requested an accommodation so that she would not be exposed to any floor products containing neurotoxins. DSU worked with Dick and her doctors to find out which neurotoxins were causing her reactions, but the doctors could not pinpoint the source. In February 2012, Dick filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging DSU failed to reasonably accommodate her request to be excused from working with the Products. The North Dakota Department of Labor (DOL) conducted an investigation and found that DSU "did not deny [Dick] a reasonable accommodation." On January 4, 2013, the EEOC fully adopted the North Dakota DOL's findings and notified Dick of her right to sue. In March 2012, Dick fell at her home, was injured, and was unable to work in any capacity. DSU gave her a Family and Medical Leave Act (FMLA) leave of absence and extended leave through June 2014. In 2014, DSU terminated Dick because she was still unable to work.

Dick filed this federal complaint on April 4, 2013, alleging failure to reasonably accommodate her disability under the Americans with Disabilities Act (ADA), constructive discharge, and violation of the North Dakota Human Rights Act. DSU filed a motion to dismiss based on sovereign immunity. The magistrate judge entered a report and recommendation dismissing the complaint without prejudice and subject to leave to amend to allow a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The report stated, "No other amendments to the complaint should be

allowed without a motion to amend and leave of court." Before the district court acted on the magistrate judge's report, Dick filed an amended complaint, which alleged a violation of the Rehabilitation Act instead of the ADA. The district court adopted the magistrate judge's report and recommendation in its entirety and stated, "[S]he will now be allowed to go forward with the claims alleged in the amended complaint that comply with the findings of the Report and Recommendation." Dick never sought leave to amend her complaint to include the constructive discharge or North Dakota Human Rights Act claims. On September 30, 2014, DSU moved for summary judgment. The district court granted DSU's motion, holding that Dick failed to prove any adverse employment action to support a Rehabilitation Act claim. Moreover, the district court noted that claims for work injuries, such as exposure to chemicals, are addressed through workers' compensation or through tort liability, not the Rehabilitation Act or the ADA. The district court also dismissed Dick's constructive discharge claim and violation of the North Dakota Human Rights Act because "[u]nder the Report and Recommendation, the Court [had] no subject matter jurisdiction . . . due to [DSU's] sovereign immunity."[2] Dick now appeals arguing that (1) the district court applied the incorrect statute of limitations to the Rehabilitation Act claim; (2) the record showed she suffered adverse employment action; and (3) granting summary judgment was improper.

---

[2]Dick does not specifically appeal the constructive discharge claim or violation of the North Dakota Human Rights Act alleged in her amended complaint, but DSU briefed these issues. By failing to brief either of these claims, she has waived them. Harris v. Folk Const. Co., 138 F.3d 365, 366 n.1 (8th Cir. 1998). Nonetheless, both claims would fail on the merits due to DSU's sovereign immunity. N.D. Cent. Code § 32-12.2-10.

## II.  DISCUSSION

### A.  Standard of Review

"We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to [Dick]." McMiller v. Metro, 738 F.3d 185, 188 (8th Cir. 2013).  Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This court generally will not reverse a grant of summary judgment based on an argument that was not presented below to the trial court.  Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1473 (8th Cir. 1996).  And, "we may affirm the district court's grant of summary judgment 'on any grounds supported by the record.'" Evance v. Trumann Health Servs., LLC, 719 F.3d 673, 679 (8th Cir. 2013) (quoting Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009)).

### B.  Statute of Limitations

DSU argues that a six-year statute of limitations should apply to Dick's claims, and Dick does not oppose applying this limitations period.[3]  The Rehabilitation Act does not have its own statute of limitations,  Ballard v. Rubin, 284 F.3d 957, 961 (8th Cir. 2002), and North Dakota has not established a statute of limitations for Rehabilitation Act claims.  "When a federal law has no statute of limitations, courts

---

[3]The district court applied 42 U.S.C. § 2000e-5(e)(1) in its analysis of the statute of limitations issue.  If Dick's failure to accommodate claim had remained an ADA claim, as it was initially pled, as opposed to a Rehabilitation Act claim as titled in the amended complaint, application of § 2000e-5(e)(1) would have been proper. "Under the ADA, an employee must file a charge of discrimination–including failure to accommodate–within 300 days of the alleged discrimination."  Henderson v. Ford Motor Co., 403 F.3d 1026, 1032 (8th Cir. 2005).

may borrow the most closely analogous state statute of limitations, unless doing so would frustrate the policy embodied in the federal law." Gaona v. Town & Country Credit, 324 F.3d 1050, 1054 (8th Cir. 2003) (quoting Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 854 (8th Cir. 2000)). Generally, courts interpret Rehabilitation Act claims as personal injury claims subject to the state's personal injury statute of limitations. Ballard, 284 F.3d at 963. Applying the longest possible limitations period of six years under North Dakota's general personal injury statute, N.D. Cent. Code § 28-01-16, many of Dick's claims would still be time-barred. Dick commenced this action in federal district court on April 4, 2013, over six years after her July 2006 accommodation request not to be exposed to the Products. Additionally, as will be discussed in the following section, there is insufficient evidence to support the contention that Dick suffered any adverse employment action as a result of the alleged incidents, which is necessary for a § 504 Rehabilitation Act claim.

Too, Dick argues that the court failed to consider the entire evidentiary record in its analysis of her claims, especially in regard to her purported hostile work environment claim. We disagree. Dick's only Rehabilitation Act claim alleged in her amended complaint was failure to reasonably accommodate her request to avoid exposure to the Products. For a court to consider the entire record, as Dick requests, the illegal practice must "involve[] repeated conduct that takes place 'over a series of days or perhaps years,' as opposed to a 'discrete act[]' that is actionable on its own." Mercer v. Se. Pa. Transit Auth., 26 F. Supp. 3d 432, 441 (E.D. Pa. 2014) (second alteration in original) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)). A hostile work environment claim, which was *not* alleged here, would allow full review because it is likely comprised of a series of repeated acts, some of which may fall outside the filing period. However, "[a]n employer's denial of a request for a reasonable accommodation," which is what Dick alleged here, "is a *discrete act* of discrimination that is an *independently actionable* unlawful

employment practice under the ADA [or the Rehabilitation Act]."[4]  Id. at 442 (emphasis added).  Thus, because the district court was only considering DSU's purported denial of Dick's accommodation request, the district court did not err by failing to considered the entire record.  Morgan, 536 U.S. at 114 (holding that the court may only consider the "discrete acts that 'occurred' within the appropriate time period").

## C.    Adverse Employment Action

Dick argues that the district court erred in finding that she suffered no adverse employment action in connection with her exposure to the Products that would give rise to a cognizable claim under § 504 of the Rehabilitation Act.  We disagree.  Dick lists numerous allegedly adverse employment actions in her amended complaint and brief, including:  failure to be transferred to other employment at DSU, failure to be granted leave, failure to be permitted to work only nine months a year, continued exposure to neurotoxins, threats of termination, harassment due to this lawsuit, retaliation, lower pay, and failure to be granted raises.  First, many of these purported adverse employment actions are not relevant to the failure to accommodate claim but rather support the constructive discharge claim and Human Rights Act claim, both of which Dick has waived on appeal.  See Harris v. Folk Const. Co., 138 F.3d 365, 366 n.1 (8th Cir. 1998).  Second, of the relevant incidents alleged in her complaint and brief, only a few of them fall within the statute of limitations.

Section 504 of the Rehabilitation Act states, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

---

[4]Cases interpreting the ADA and the Rehabilitation Act are interchangeable. Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008).

assistance . . . ." 29 U.S.C. § 794(a). An employer discriminates against an employee "if the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.'" Ballard, 284 F.3d at 960 (alterations in original) (quoting Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951 (8th Cir. 1999)). "To establish a prima facie case of disability discrimination, a plaintiff must show: (1) that she was disabled, (2) that she was qualified to do the essential job function with or without reasonable accommodation, and (3) that she suffered an adverse action due to her disability." Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008). Only the third factor is at issue in this case. Failure to accommodate claims under the Rehabilitation Act are analyzed under "a modified burden-shifting analysis," meaning that in some instances the employer may be required to prove the essential functions of the job or show that he was unable to accommodate the employee. Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003).

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Buboltz, 523 F.3d at 868. Examples include "[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects." Id. An employer is also liable for committing an adverse employment action if the employee in need of assistance actually requested but was denied a reasonable accommodation. Hatchett v. Philander Smith College, 251 F.3d 670, 675 (8th Cir. 2001). Merely being unhappy with employment changes, on the other hand, is not enough to constitute an adverse employment action. Buboltz, 523 F.3d at 868. Thus, "job reassignment involving no corresponding reduction in salary, benefits, or prestige" or "minor changes in duties or working conditions, even . . . unwelcome ones" are insufficient for a claim of employment discrimination under the Rehabilitation Act. Id. It is also important to note that the "person's disability [must] serve as the *sole* impetus for a defendant's adverse action against the plaintiff." Wojewski v. Rapid City Reg'l Hosp., Inc., 450 F.3d 338, 344 (8th Cir. 2006) (quoting Amir v. St. Louis Univ., 184 F.3d 1017, 1029 n.5 (8th Cir. 1999)). "A reasonable

accommodation is one which enables a[n] individual with a disability to perform the essential functions of the position." Hatchett, 251 F.3d at 675. This does not mean the employer must hire additional employees, id., give other employees more work, id., or give the disabled employee indefinite leave, Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995).

Dick did not suffer any adverse employment actions due to her disability. DSU's accommodations were reasonable and enabled Dick to perform the essential functions of her job as a custodian. The crux of Dick's failure to accommodate claim under the Rehabilitation Act stems from her exposure to residual smells from the Products and her alleged harmful exposure to new products in January 2012. In regard to the residual smells, DSU did not force her to work with the Products. Rather, DSU relieved Dick of all floor-stripping and -waxing duties and transferred her twice to different locations where there was less vinyl flooring. Dick argues that there were alternative accommodations that DSU could have provided; however, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." EEOC v. Yellow Freight Sys., Inc., 253 F.3d 943, 951 (7th Cir. 2001) (alteration in original) (quoting Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996)). Further, most of the exposures to the residual smells of the Products were caused by Dick failing to stay away from areas where the Products were being used and refusing to wear the respirator DSU provided. Such *accidental* exposure to the Products was certainly not *because of* her disability; it was inadvertent. Moreover, the residual smells did not create a disadvantageous work environment, and she cites no tangible, adverse employment action as a result of the accidental exposures.

Similarly, Dick suffered no adverse employment action or material disadvantage as a result of the January 2012 exposure to fungicide. After her reaction to the fungicide, she requested not to be exposed to neurotoxins. DSU's initial decision to use the fungicide was not a denial of Dick's requested accommodation.

Dick's reaction was caused by exposure to fungicide, not to the Products in her requested accommodation. And, there was no adverse employment action after Dick submitted an accommodation request asking that she not work around or in the presence of neurotoxins. She was never required to use the fungicide that contained neurotoxins. Moreover, any claim that DSU failed to use reasonable care in protecting her should have been brought as a workers' compensation or tort claim, which the Rehabilitation Act does not address. Smith v. Blue Cross Blue Shield of Kan., Inc., 102 F.3d 1075, 1077-78 (10th Cir. 1996).

Dick also alleges that she suffered adverse employment action by being denied medical leave. However, she took leave for various illnesses, which exhausted her paid leave, and was then allowed to take unpaid leave. She also was never denied leave for her medical appointments and in fact, was on leave for over two years after her injury at home. DSU was not, however, required to grant additional indefinite leave; that is not a reasonable accommodation. See Myers, 50 F.3d at 283.

Lastly, Dick alleges adverse employment action based on not being transferred to a non-custodian position and DSU's decision not to allow her to work only nine months a year. However, both of these requested accommodations were made in September 2006 and thus are time-barred by the statute of limitations. Also, neither a transfer nor a reduced work schedule were necessary because, as discussed above, DSU modified Dick's duties so that she successfully continued working as a custodian until she was hurt at home. Moreover, in regard to the job transfer, such an accommodation is only reasonable in extreme cases, Burchett v. Target Corp., 340 F.3d 510, 518 (8th Cir. 2003), and Dick could have, but did not, apply for non-custodian jobs available during her time at DSU. As for the reduced work schedule, working only nine months a year was not feasible for custodians and thus not a reasonable accommodation.

## D. Summary Judgment

Dick argues that the district court erred in granting summary judgment because there are material issues of fact that must be decided at trial. We disagree. At this stage of the legal process, the judge is not to weigh evidence or assess credibility "but [should] determine [only] whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). There is a genuine dispute "when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Westchem Agric. Chems., Inc. v. Ford Motor Co., 990 F.2d 426, 429 (8th Cir. 1993) (quoting Anderson, 477 U.S. at 248). A fact is material if it "might affect the outcome of the suit." Anderson, 477 U.S. at 248. Thus, there must be more than "the mere existence of *some* alleged factual dispute" to overcome summary judgment. Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quoting Anderson, 477 U.S. at 247). Here, Dick asserts facts that allegedly contradict DSU's argument, but many of those facts are not supported by the record, support claims Dick did not appeal, or reference incidents of alleged adverse action that are barred by the statue of limitations as discussed above. Other facts, such as Dick's insistence that she had in fact previously applied for office jobs at DSU, while disputed, would not affect the outcome of the suit and as such, are not material. Anderson, 477 U.S. at 248. Thus, there was no genuine dispute of material fact preventing the district court from granting summary judgment in favor of DSU.

## III. CONCLUSION

The judgment of the district court is affirmed.

_____