# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2638
_____

Julie McKey

*Plaintiff - Appellant*

v.

U.S. Bank National Association, doing business as U.S. Bank

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 17, 2020
Filed: October 23, 2020

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Julie McKey claims U.S. Bank fired her because of her age and in retaliation for reporting discrimination in violation of the Minnesota Human Rights Act. The district court[1] granted U.S. Bank's motion for summary judgment and we affirm.

_____

[1]The Honorable Nancy Ellen Brasel, United States District Judge for the District of Minnesota.

I.

McKey began working for U.S. Bank, a national bank with offices in Minneapolis, Minnesota, in 1975. In 2006, she started as a Securities Specialist for the Global Corporate Actions Department. Her job included managing clients' financial portfolios, processing trades and transactions, meeting deadlines, and working with multiple computer systems. She was generally expected to do her job within a 40-hour workweek.

From 2011 until she was fired in September 2016, McKey worked under Yvonne Mehsikomer, who reported to Senior Trust Technology and Support Services Manager Keith Frohlicher. Frohlicher reported to U.S. Bank Operations Manager Alice Owens.

U.S. Bank gives annual performance reviews to its employees on a 5-point "grading" scale—a score of 1 on the scale means "exceptional"; 5 means "not effective." D. Ct. Dkt. 127 at 3. Though McKey consistently scored 3s ("solid performance") on her performance reviews from 2011 to 2015,[2] her reviews often included comments from Mehsikomer about performance issues.

In 2015, U.S. Bank introduced an upgrade to XSP, the computer program that McKey and her team used to make client elections. Employees were trained, but McKey requested additional training and someone to sit with her at her desk every day to assist her. In July 2015, Mehsikomer began documenting McKey's performance issues in a "significant event form," and Mehsikomer and Frohlicher met with her multiple times in the fall of 2015 about mistakes posting client elections, her failure to complete assigned duties, and her need for extra time to complete work.

In April 2016, Mehsikomer put McKey on a 60-day performance improvement plan (PIP). When Mehsikomer met with McKey to start the PIP,

---

[2]The record contains no performance review from 2013.

McKey said several things in the PIP were inaccurate. McKey then emailed Kerri Guse, Senior Human Resources Business Partner, writing "I am concerned that my manager is attempting to have me fired due to my age," and Guse called McKey to discuss her concerns. D. Ct. Dkt. 127 at 6.

McKey continued to make errors during the PIP process, but completed the program on July 8, 2016. Early that August, an error was made in the election for a corporate action notice for a customer asset called "Iberdrola," which resulted in a $62,000 loss. D. Ct. Dkt. 127 at 7. Suspicion first fell on McKey, who was responsible for client elections, leading Mehsikomer to ask McKey to see whether other customer accounts had been affected by the same issue. McKey failed to identify two other accounts that had been affected and also gave Mehsikomer incorrect calculations. McKey made more errors the following week.

On August 18, Mehsikomer emailed Frohlicher and Owens requesting McKey be fired because of "several performance issues." App. 276–77. On August 30, after information came to light that the Iberdrola error may have occurred due to a problem with the XSP software, Mehsikomer emailed Guse explaining that McKey could not be held responsible for it, but that "there are other errors . . . . I am not sure if they warrant termination, but at this point I am not clear how to proceed." App. 281.

On September 13, 2016, Mehsikomer, Guse, and Frohlicher met with McKey and told her that she had 30 days to find a different job or she would be fired. McKey applied to several jobs[3] within U.S. Bank, but was not interviewed for any of them. On October 13, 2016, U.S. Bank fired McKey.

---

[3]McKey says that she applied for nine jobs, McKey Br. 19, and U.S. Bank asserts that McKey applied for seven jobs, U.S. Bank Br. 18. The district court found that McKey applied for seven jobs. D. Ct. Dkt. 127 at 9. Although the record is unclear, the distinction is insignificant.

McKey sued in Minnesota state court, and U.S. Bank removed the case to federal court based on diversity jurisdiction. The district court granted summary judgment in favor of U.S. Bank and McKey timely appealed.

## II.

"We review a district court's decision to grant summary judgment *de novo*," *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 936 (8th Cir. 2019) (citation omitted), and will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). "Although we view the evidence and draw all reasonable inferences in favor of the nonmoving party, we do not credit mere allegations, unsupported by specific facts or evidence." *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 807 (8th Cir. 2020) (cleaned up).

## A.

McKey argues that U.S. Bank discriminated against her based on age by firing her and failing to rehire her in a new position. McKey also argues that U.S. Bank retaliated against her for reporting discrimination concerns in violation of the Minnesota Human Rights Act. Discrimination claims under the MHRA "are considered under the same analysis as claims under the Age Discrimination in Employment Act." *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003). So, we rely on the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Beasley*, 933 F.3d at 937 (explaining that "[w]here there is no direct evidence of discrimination, we use the burden-shifting framework from *McDonnell Douglas Corp. v. Green*").[4]

---

[4]McKey contends that the district court erred because it did not consider the evidence as a whole, but rather compartmentalized the facts by analyzing her claims

-4-

The *McDonnell Douglas* framework first requires that McKey make a prima facie case of discrimination; once she does, the burden shifts to U.S. Bank "to provide a legitimate, nondiscriminatory reason for the discharge." *Id.* (citation omitted). If U.S. Bank meets this burden, the burden shifts back to McKey to show that U.S. Bank's proffered nondiscriminatory reasons are pretext for intentional discrimination. *Id.* We will assume without deciding that McKey made a prima facie case of discrimination. *See Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 621 (8th Cir. 2017) (assuming, without deciding, that plaintiff made a prima facie case).

B.

Moving to *McDonnell Douglas*'s second step, the burden shifts to U.S. Bank to provide a legitimate, nondiscriminatory reason for McKey's discharge. *Beasley*, 933 F.3d at 937 (citation omitted). U.S. Bank points to McKey's "poor performance, as outlined in her [PIP], and her continued errors after the [PIP] was completed." D. Ct. Dkt. 127 at 14.

McKey argues that the district court erred when it found that U.S. Bank provided a legitimate, nondiscriminatory justification. She says that a jury could find that her performance did not begin to suffer in 2015 and that she continued to be a "solid performer" on the basis of her performance review ratings and the testimony of her co-worker, who believed McKey was a good worker.

The record makes clear, however, that McKey had several performance issues; these are reflected in both the "significant event form" Mehsikomer created in 2015

---

through "the prism of *McDonnell Douglas*." McKey Br. 47. This, she says, allowed the district court to both ignore and misconstrue evidence. However, McKey does not identify what evidence the court allegedly misconstrued or ignored, nor does she provide evidence that the court erred by using the *McDonnell Douglas* framework. We will not entertain this claim further. *Meyers v. Starke*, 420 F.3d 738, 743 (8th Cir. 2005) ("To be reviewable, an issue must be presented in the brief with some specificity.").

to log McKey's performance issues and the comments made on McKey's performance reviews. For example, McKey's 2014 review explained that she "was having a hard time processing her events within an 8[-]hour day and was working a lot of overtime and needing to ask coworkers for help," and that she "needs to continue to work on processing all her events in an 8-hour work day, and also without help." D. Ct. Dkt. 127 at 3. Similarly, her 2015 review stated that McKey "needs to continue working on staying on top of her desk and completing tasks assigned to her in an 8-hour day" and "needs to work on reporting issues, not assigned to her, to her manager right away rather than do them herself and get behind on her own desk." *Id.* The review further states that McKey caused an error "by not properly researching her events on [the client election software], or asking her manager for assistance," and concludes by reporting that McKey "had a year of challenges and struggles . . . [and] needs to learn to utilize her time more efficiently and ensure her own desk is complete." *Id.* at 4. McKey continued to make errors while on the PIP and after she completed it. Most significantly, McKey admitted to these issues and that she "made errors" in the course of her employment. McKey Dep. 103:12; *see* McKey Dep. 53, 104, 134, 234.

McKey contends that a jury could doubt her superiors' claim that her performance declined in light of her co-worker's testimony that there "was nothing leading up to" McKey's firing "that [he] had been aware of that would . . . warrant Ms. McKey being fired." Caswell Dep. 32:12–14. We agree with the district court's conclusion that "there is nothing in the record suggesting" McKey's co-worker "would have been party to management discussions or meetings about McKey's performance." D. Ct. Dkt. 127 at 16. Even viewing the facts in the light most favorable to McKey, U.S. Bank articulated a legitimate, nondiscriminatory reason to fire her with adequate support in the record.

C.

At the third step, McKey must show that U.S. Bank's explanation for her firing is "mere pretext for intentional discrimination." *Beasley*, 933 F.3d at 938 (citation

omitted).  She may do so by showing that U.S. Bank's explanation is "unworthy of credence because it has no basis in fact" or by "persuading the court that a prohibited reason more likely motivated [U.S. Bank]." *Aulick*, 860 F.3d at 621 (citation omitted).  McKey raises three issues that she says show pretext:  (1) similarly situated younger workers (*i.e.*, comparators)[5] were treated more favorably than McKey; (2) Mehsikomer favored younger workers; and (3) U.S. Bank changed its basis for firing McKey.

i.

McKey first argues that the district court wrongly discounted evidence that younger comparators were treated more favorably.  "At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff [*i.e.*, qualify as comparators] is a rigorous one" and requires McKey to show that she and the employees outside of her protected class "were similarly situated in all relevant respects."  *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012) (citation omitted).  "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)).  However, the violations treated differently need only be of "comparable seriousness" and not the "exact same offense."  *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (citation omitted).

McKey identifies eight possible comparators:  T.K., J.A., M.W., D.O., J.D., J.T., P.E., and K.E.  Although McKey states that all eight were on Mehsikomer's team, held the title of "Securities Specialist," and "[did] the same work," the record is clear that there are different Securities Specialist ranks and not all eight employees

---

[5]A comparator is, "in court-speak," "another similarly situated individual." *Lewis v. City of Union City*, 918 F.3d 1213, 1217 (11th Cir. 2019) (quoting *Texas Dep't of Cmty. Affairs v. Burdline*, 450 U.S. 248, 258–59 (1981)).

had the same job duties. McKey fails to specify the job duties for T.K., D.O., J.T., M.W., and K.E., so we cannot evaluate whether they have been subject to the same standards or if there are any mitigating or distinguishing circumstances related to their conduct. Nor is it our job to search the record for those duties. *See Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006).

McKey points to P.E., J.D., and J.A. as the strongest examples of differential treatment. However, none of them was similarly situated in all relevant respects. P.E. was a Securities Specialist 1 (and so more junior), whereas McKey was a Securities Specialist 2. P.E. was also required to complete a PIP and, like McKey, was also fired shortly following the completion of that program for a subsequent mistake. J.A. was put on a PIP for issues regarding job responsibilities that McKey did not have. He was eventually fired for excessive tardiness. Lastly, J.D. worked as a Securities Specialist 3 and had different job duties than McKey. He eventually resigned. P.E., J.D., and J.A. are not similarly situated in all relevant respects and so are not comparators.

ii.

McKey next argues the district court failed to consider evidence that Mehsikomer favored younger workers. McKey relies on Mehsikomer's contradictory statements regarding her involvement in hiring college recruits, the average age of the members on Mehsikomer's team, and Mehsikomer's hiring of 57-year-old M.W. in June 2016.

McKey first challenges Mehsikomer's credibility. During her deposition, Mehsikomer testified that she was not involved in hiring employees from the college recruit program. That testimony was contradicted by Nate Caswell, who stated that he was interviewed by Mehsikomer during the program. Be that as it may, asserting that a jury could fail to believe an employer on an ancillary point is not enough to show pretext: "[T]he fact finder must have evidence on which to base a reasonable belief that age was a determining factor." *Tatom v. Georgia-Pac. Corp.*, 228 F.3d

-8-

926, 932 (8th Cir. 2000). The same goes for McKey's bare assertion that the average age of Mehsikomer's team members was 36 years old in early 2016.

McKey also alleges M.W. was hired "in an effort to claim that Mehsikomer did not discriminate against older workers." McKey Br. 36. McKey offers no evidence to support this claim. Instead, she asserts that a jury could find it "suspicious." *Id.* Because the record contains no evidence that Mehsikomer knew about McKey's report of discrimination when she hired M.W., we decline to accept McKey's invitation to engage in speculation. McKey also attempts to make M.W. a comparator, claiming the seven-year age gap between them permits her to do so. But she cannot have it both ways. Either M.W. is an older worker hired to cover up discrimination or M.W. is a younger worker that acts as a comparator. M.W. cannot be both.

### iii.

Finally, McKey argues that the district court erred in concluding that U.S. Bank never changed its basis for firing her. This is important to McKey's argument because "[s]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext." *Aulick*, 860 F.3d at 621 (quoting *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir. 1994)). McKey points to Mehsikomer's August 18 email to Frohlicher and Owens to claim that Mehsikomer first requested McKey be fired based on the $62,000 Iberdrola error, but later changed her reasoning after discovering there was no way to determine whether McKey was at fault. But this misstates the record. Mehsikomer's August 18 email detailed "several performance issues" in addition to the Iberdrola error, and explains that "due to these performance issues, and the fact that she just [came] off [the PIP] on 7/8, I am requesting Julie be terminated." App. 276–77. Mehsikomer's emails sent on August 18 and those sent later are consistent and do not represent a change in basis for firing.

III.

McKey next argues that the district court erred in ruling that no jury could find McKey experienced retaliation for reporting discrimination. To succeed on a retaliation claim under the MHRA, McKey "must establish the following elements: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010) (citation omitted).

The district court granted U.S. Bank's motion for summary judgment because McKey's retaliation claim failed to show causation. The district court concluded there was no evidence that Mehsikomer or the other supervisors had knowledge of McKey's discrimination report before she was fired, and that the four-month span between McKey's report and the decision to fire her was too long to support causation for a retaliation claim without additional evidence. We agree. McKey offers no evidence to support causation.[6]

IV.

Finally, McKey argues that the circumstances surrounding U.S. Bank's refusal to hire her for the other U.S. Bank jobs creates an inference of discriminatory and retaliatory motive. A failure to hire claim under the MHRA is subject to the *McDonnell Douglas* framework. *Sigurdson v. Carl Bolander & Sons Co.*, 532

---

[6]McKey argues for the first time on appeal that Guse, to whom McKey made her report, was a decisionmaker in her firing. Except in special circumstances not present here, we do not consider arguments when they are made for the first time on appeal. *Orr v. Wal-mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002) (superseded by statute in non-relevant part as stated in *Maday v. Dooley*, 4:17-CV-04168-KES, 2019 WL 4935705, at *39 (D.S.D. Mar. 8, 2019)). McKey also claims that the district court erred by ignoring a discrimination report she made to Guse less than two weeks before supervisors made the decision to fire her. As with her previous argument, McKey failed to raise this matter before the district court. *Id.*

N.W.2d 225, 228 (Minn. 1995). The only issue here is whether U.S. Bank's decision not to hire McKey in another position was pretextual.

McKey raises four claims of pretext. First, she says that U.S. Bank provided inconsistent reasons for rejecting her application to other positions. To do so, she contrasts U.S. Bank's answers that McKey missed the deadline to apply to most positions with Guse's statement that "there [are] really no deadlines." Guse Dep. 34:17. However, Guse clarified multiple times during her deposition that the reference to missing the deadline meant the position had already been filled but the posting had not yet been removed. Guse Dep. 32–33, 37. Contrary to McKey's assertion, no reasonable juror would find this inconsistent.

Second, McKey points to the ages of the applicants hired for positions instead of her. The applicants hired were 24, 24, 27, 31, 36, 36, and 52. Rather than argue or explain how the age of these applicants undermines U.S. Bank's non-discriminatory reasons for not hiring McKey, she merely highlights their ages. This assertion that age equals pretext lacks any supporting argument so we will not rely on it. *Meyers*, 420 F.3d at 743 ("To be reviewable, an issue must be presented in the brief with some specificity.").

Third, McKey claims that Mehsikomer and Guse told recruiters not to hire her, saying she was a poor performer. We agree with the district court that the record does not support McKey's argument, and McKey points to no evidence undermining the court's conclusion.

Finally, McKey alleges that Guse was evasive about her role in causing McKey to not be hired. To do so, McKey juxtaposes Guse's statement that no hiring manager would "have known about [McKey's] work performance" with Guse's later statement that she told recruiters—a different group of people—that McKey performed poorly. McKey Br. 55. Even if we assume that Guse was inconsistent about whom she communicated with, the mere ability of a jury to disbelieve McKey's employer does

not suffice as evidence supporting a reasonable inference that age was a determining factor in McKey's firing.  *See Tatom*, 228 F.3d at 932.

VI.

Viewing the facts in the light most favorable to McKey, we conclude no reasonable jury would find that McKey was discriminated against on the basis of age. We also conclude McKey's retaliation claim fails to demonstrate causation.  The district court's grant of summary judgment is affirmed.

_____