# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-2160

_____

Jen Banford

*Plaintiff - Appellant*

Annette Wiles

*Plaintiff*

v.

The Board of Regents of the University of Minnesota

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 10, 2022
Filed: August 9, 2022
_____

Before ERICKSON, MELLOY, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Jen Banford worked at the University of Minnesota Duluth (UMD) as the women's softball head coach and part-time Director of Operations for the women's hockey team. After UMD relieved Banford of her hockey duties, she sued, claiming

that she was fired for being gay. The district court[1] granted summary judgment to UMD, and we affirm.

I.

UMD is a Division II school, with the exception of its Division I men's and women's ice hockey teams. Banford, a gay woman, was hired as UMD's head softball coach in 2005. Starting in 2009, she also served as the Director of Operations for the women's hockey team.[2] A few years later, Josh Berlo started as UMD's new Athletic Director. He was, by all accounts, supportive of Banford—he renewed her contract and gave her high marks on her performance review.

During the 2014–2015 season, the women's hockey team staff consisted of: (1) head coach Shannon Miller, who was also Banford's live-in romantic partner; (2) assistant coaches Laura Schuler and Gina Kingsbury; (3) Julianne Vasichek, who was both a strength and conditioning coach and the part-time hockey equipment manager; (4) Kelly Wheeler, an assistant soccer coach who served part-time as the women's hockey Sports Information Director; and (5) Jacqueline Phillips, an athletic trainer assigned to women's hockey and track. All women's hockey staff members that season were gay women.

Sometime in the summer or fall of 2014, Berlo decided to fire Miller as women's hockey head coach. He asked his Assistant Athletic Director to consult with HR on this and several other athletic department staffing changes. Altogether, Berlo wanted to fire six staff members: Miller, Schuler, Kingsbury, Vasichek, Banford, and Annette Wiles, the women's basketball head coach. All six were gay women. In December 2014, UMD non-renewed Miller, Schuler, and Kingsbury's coaching contracts. Banford was relieved of her administrative position with the

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

[2]It is common for Division II coaches at UMD to also do part-time administrative work for other sports.

women's hockey team, but was offered a contract to stay on as the softball head coach. Banford declined, and left UMD at the end of the 2014–2015 season.

Banford sued UMD in 2015, alleging violations of Title VII, Title IX, and the Minnesota Human Rights Act. The district court dismissed the state law claims for lack of jurisdiction, and granted summary judgment to UMD on the federal discrimination claims.[3] Banford appealed, and we remanded for the district court to consider her claims in light of the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). The district court again granted summary judgment to UMD, and Banford again appealed.

II.

"We review the grant of summary judgment *de novo*, drawing all reasonable inferences in favor of [Banford]. Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *LeBlanc v. McDonough*, 39 F.4th 1071, 1075 (8th Cir. 2022) (citation omitted).

A Title VII plaintiff can survive summary judgment either by (1) presenting direct evidence of discrimination, or (2) "creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Towery v. Miss. Cnty. Ark. Econ. Opportunity Comm'n, Inc.*, 1 F.4th 570, 573 (8th Cir. 2021) (citation omitted). Banford does not present any direct evidence of discrimination, so we analyze her claims under the familiar *McDonnell Douglas* burden-shifting framework. First, Banford must establish a *prima facie* case of discrimination. If she does, the burden shifts to UMD to articulate a legitimate, nondiscriminatory reason for not renewing her hockey contract. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011).

---

[3]At the time, Eighth Circuit precedent foreclosed Title VII claims based on sexual orientation.

"The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Id.* at 1047 (citation omitted). "The ultimate burden then falls on [Banford] to produce evidence sufficient to create a genuine issue of material fact regarding whether [UMD's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.* at 1046 (citation omitted) (cleaned up). The "burden to show pretext 'merges with the ultimate burden of persuading the court that [Banford was] the victim of intentional discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

Even assuming that Banford could establish a *prima facie* case of discrimination, she has not met her burden of showing that UMD's legitimate, nondiscriminatory justification for nonrenewal is pretextual. UMD says it relieved Banford of her hockey duties because, when a Division I head coach is fired, it is typical to fire other staff members who work closely with them. This allows the incoming head coach to select their own staff. Unlike the staff members who were retained, the Director of Operations works closely enough with the head coach to make this a material bargaining chip in recruiting a new head coach. This explanation is enough to carry UMD's burden, so it falls on Banford to show that the justification is mere pretext.

A plaintiff can create a genuine issue of material fact regarding pretext by showing "that the employer's explanation is unworthy of credence because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a prohibited reason more likely motivated the employer." *Id.* (citation omitted) (cleaned up).

Banford argues that UMD's legitimate, nondiscriminatory justification isn't credible because the accepted Division I practice of "cleaning house" when a head coach leaves is limited to firing *coaching* staff—not operations staff. But exactly which positions would be non-renewed at *other* schools doesn't decide this case; the only question is whether "cleaning house" was UMD's true motivation. "Federal

courts do not sit as a super-personnel department that reexamines an entity's business decisions. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir. 2021) (citation omitted) (cleaned up); *see also Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002–03 (8th Cir. 2012) (reaffirming "honest belief rule" that an explanation that turns out to be wrong supports a finding of discrimination only if "the employer did not truly believe" it). We find it credible that UMD would want to allow its new head coach to choose her Director of Operations.

Banford also points out that similarly situated comparators—Wheeler, Vasichek, and Phillips—were not fired. "At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff . . . is a rigorous one and requires [Plaintiff] to show that she and the employees outside of her protected class were similarly situated in all relevant respects." *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 600 (8th Cir. 2020) (citation omitted). Vasichek and Wheeler cannot be used as comparators because Berlo also knew that they were gay, so they weren't outside Banford's protected class. *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 957 (8th Cir. 2012). And Phillips was not similarly situated to Banford either, because her duties were different from Banford's: Banford was in charge of operations, and Phillips was responsible for strength and conditioning. *See McKey*, 978 F.3d at 600. They also reported to different people: Banford to Berlo, and Phillips to Assistant Athletic Director Mike Wendinger. *See id.* The Director of Operations position requires significantly more cooperation with the head coach than the trainer position, which is player-centered and purposefully insulated from becoming too responsive to the head coach, in the interest of player wellness. Because of the difference in their roles, Banford and Phillips are not similarly situated for purposes of the pretext analysis. *See Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 939 (8th Cir. 2019) (finding that quality control inspector for motor oil was not similarly situated to packaging quality control inspector).

Banford also has not carried her ultimate burden of persuading us that she was the victim of intentional discrimination. Out of four part-time hockey staff members, three were openly gay. Two of those openly gay women's contracts were renewed, along with Phillips's, and one—Banford's—was not. The differentiating factor between those whose contracts were renewed and Banford was not their sexual orientation.[4] Banford has not met her burden of showing that she was fired because of her sexual orientation, rather than to allow the incoming head coach to appoint her own Director of Operations. Accordingly, we affirm the grant of UMD's motion for summary judgment.

———————————————

[4]Banford argues that she is different even from the openly gay staff members because she was Miller's live-in partner. But even if that's true, being romantically involved with a *particular person* is not a protected class under Title VII.