# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0239
Filed June 10, 2026

———————————

**Pamela Reeves,**
Plaintiff–Appellant,

v.

**Costco Wholesale Corporation,**
Defendant–Appellee.

———————————

Appeal from the Iowa District Court for Dallas County,
The Honorable Thomas P. Murphy, Judge.

———————————

**AFFIRMED**

———————————

Marrissa Pasker (argued) and Christopher Stewart of Boles Witosky
Stewart Law PLLC, Des Moines, attorneys for appellant.

Dawn Reddy Solowey (pro hac vice) (argued) and Michael E. Steinberg
(pro hac vice) of Seyfarth Shaw LLP, Boston, Massachusetts; Katie L.
Graham and David T. Bower of Nyemaster Goode, P.C., Des Moines;
Gerald L. Pauling (pro hac vice) and Uma Chandrasekaran (pro hac vice) of
Seyfarth Shaw LLP, Chicago, Illinois; attorneys for appellee.

———————————

Heard at oral argument
by Greer, P.J., and Buller and Sandy, JJ.
Opinion by Buller, J.

**BULLER, Judge.**

Pamela Reeves appeals a civil jury verdict rejecting her claim that Costco Wholesale Corp. discriminated against her because of her age when it terminated her employment in 2021. She challenges a jury instruction about comparator employee evidence and the district court's denial of her motion to amend her petition after trial had begun. On our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

From 2004 until 2021, Reeves worked at Costco, moving from an hourly cashier assistant up through assorted positions around the store, first reaching manager level in 2006, then moving among different departments as needed as part of a company policy to rotate managers. She became deli manager for her store in 2016, staying there until she was let go in 2021. Although a department manager, she was paid at the rate of the next level up (staff manager). According to Reeves, she did not wish to move any higher up the management ladder.

Costco had an employee agreement establishing the rules, rights, and policies of the company. Every three years, employees review and sign acknowledgements of reading and complying with the updated employee agreement policies; Reeves had last signed the agreement in March 2019. Chapter 4 of the agreement set forth employment status-change provisions, including the company's rights when it comes to termination of employment. Section 11.3 of the agreement listed the causes for termination, which are separate from causes for disciplinary action. Violation of any of listed actions could "result in immediate termination of employment," with no counseling notices required; Costco reserved the right to take other disciplinary actions than termination. Among the causes listed was "Dishonesty" including grazing, theft, or fraud. "Grazing" includes "making personal use of shelf

stock," with the additional note: "If you didn't buy it, don't eat it!" A more comprehensive grazing policy was issued in 2009, clarifying that grazing includes an employee making personal use of any items that are not paid for at the time they are taken—prepayment or later payment were not permitted. Reeves signed and dated her understanding of the policy.

In February 2021, Reeves was in a career development meeting for the deli supervisor working under her who wanted to move up at Costco. The store's assistant general manager mentioned he might have to transfer to another store (for reasons not relevant to this case), and Reeves said he could just wait until she retired and take her job. The other manager asked if Reeves was considering retiring, and Reeves answered she would if she could figure out healthcare. The other manager asked how old Reeves was, and she answered, "Sixty-one."

On March 16, Reeves got to work around 7:00 a.m. She entered the building through the deli, grabbed a bag of chips, and walked up to the managers' office. The registers were not open yet, and she chose not to call someone to open a register so she could pay for the chips. Normally she would pay for the chips either as soon as the registers opened or at latest by the end of the day. But, distracted by construction in the deli area and inventory, she forgot to pay for the chips. She was off the two following days and then worked odd hours because of the construction. On March 22, Reeves left work early because her knee hurt, and she took the chips home with her.

Two employees noticed Reeves's actions, checked her purchase history through a company program, and reported Reeves's grazing.

A counseling notice was issued, and Reeves was suspended for two weeks as Costco investigated. Costco's investigation included review of surveillance footage showing Reeves walked up the food aisle, took a bag of chips, and went to the office. The general managers and assistant manager also reviewed Reeves's purchase history and found she did not buy the bag of chips. Reeves explained she thought she had paid for the chips—she bought chips on a regular basis. On her way out of the store on March 22, Reeves told the receipt-checker at the door that she didn't know where the receipt was.

During her suspension period, the store managers forwarded the information to corporate; human resources recommended termination. The vice presidents reviewing the recommended actions (as required under the Costco employee agreement) expressed extreme dissatisfaction with the corporate policy that would require termination but "c[ould]n't find a way around this." The vice presidents approved Reeves's termination, noting she was eligible for rehire. On April 12 she was fired for "Dishonesty" for removing the bag of chips from the sales floor without paying for them. She filed a complaint with the Iowa Civil Rights Commission, and after it issued an administrative release and right to sue letter, she filed a petition against Costco claiming age discrimination for the termination of her employment.

Reeves said she "d[id]n't know" if the employees reported her because of her age. But both employees—the store's sales auditor and payroll clerk—were approximately her age. Reeves had reported complaints about both employees to the general manager in the past.

Reeves offered evidence of lesser discipline against other, younger Costco employees (comparators) for what she considered similar conduct. Costco objected to her comparators, urging the other employees were not

similarly situated and so not comparable—some were hourly as opposed to Reeves as manager, and the managers' conduct included workplace violence or uncorroborated allegations.

The comparators discussed at trial include the following, some of whom are persons Reeves herself reported for misconduct:

- A general comparator that, at manager meetings, other managers brought food and paid for it afterwards. Reeves specifically remembered a food court manager saying he would need to remember to pay for a pizza after the meeting. The food at the meetings was purchased by the store.

- J.G., a supervisor, wore a hooded sweatshirt while working, in violation of company policy. Reeves was reporting him when he "shoved" another manager while coming at her. J.G. was never disciplined.

- R.W., a department manager, dated several packages of meat with the wrong date. The meat was pulled off the floor, and Reeves was unaware of any investigation or disciplinary action. The general manager called it "an honest mistake" and did not forward it to human resources for discipline. An employee later reported R.W. for violations, and he was terminated for violating the meat-grind policy.

- J.N., assistant general manager, moved a pallet of product during a construction project, and the product expired. But J.N. rang up the product as though marketing had given it away. According to Reeves, this incident was never investigated.

- J.S., another assistant general manager, had inappropriate sexual relationships with employees under his chain of supervision. He was demoted and transferred to another store.

- M.C., an hourly worker discussed by the store's general manager, grabbed a bottle of water without paying. But Costco's investigation showed the bottle was "from a cart in the back that was for employees." The manager requested termination, but corporate human resources recommended against it. The same employee had a second incident where he didn't pay for the warranty on a replacement tire until after he'd checked with the manager whether he actually owed the money. M.C.'s employment was ultimately terminated when he walked out the door with granola bars he "grazed" from the warehouse.

- C.L., a department manager, sent inappropriate images and videos to an hourly employee. The general manager recommended termination, but corporate human resources recommended a suspension, which was imposed.

According to Reeves, these comparators were generally younger than her.

At the close of evidence but before the case went to the jury, Reeves moved to amend her petition to conform to the evidence to add a breach of contract claim. Reeves claimed the amendment was necessary as she was not aware the employee agreement was a binding contract before the start of trial. But Costco responded that Reeves had repeatedly signed the employee agreement, it was the first document produced during her extensive discovery, and she deposed numerous managers and could have questioned them about it. Costco further asserted the two claims have different elements

to prove and different damages available. The court denied Reeves's motion to amend. The court's ruling referenced the reasons in Costco's resistance, which were: (1) the new claim was not plead; (2) granting the motion would substantially change the issues at trial; and (3) Reeves knew or should have known of a possible contract claim before trial. Reeves appeals.

## STANDARD OF REVIEW

"We review alleged errors in jury instructions for correction of errors at law." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 570 (Iowa 2017) (citation omitted). "A court's instructions to the jury must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide." *Hunter v. City of Des Moines*, ___ N.W.3d ____, ____, 2026 WL 1108661, at *7 (Iowa 2026) (cleaned up). "Instructional error does not merit reversal unless it results in prejudice." *Haskenhoff*, 897 N.W.2d at 570 (cleaned up). Prejudicial instructions "materially misstate the law" or mislead the jury. *Id.*

"We review rulings on motions to amend the pleadings for abuse of discretion. We will reverse a ruling on a motion to amend only where a clear abuse of discretion is shown." *Mormann v. City of Manchester*, 27 N.W.3d 820, 830 (Iowa 2025) (cleaned up).

## DISCUSSION

At trial, a plaintiff alleging age discrimination must establish he or she was a victim of discrimination "by direct or indirect evidence." *Hedlund v. State*, 930 N.W.2d 707, 719 (Iowa 2019). Our supreme court has directed that at trial "we apply the *Price Waterhouse* motivating-factor standard in instructing the jury and the defendant is entitled to an instruction on the same-decision defense recognized in *Price Waterhouse* if properly pled and

proved." *Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 272 (Iowa 2019) (discussing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)). "[T]he plaintiff must present credible evidence of conduct or statements of supervisors which may be seen as discrimination sufficient to support an inference that the discriminatory attitude was a motivating factor." *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996).

If the "employee proves discrimination was a motivating factor in the employer's actions, the employer [can] avoid liability by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender or other protected characteristics into account." *Feeback v. Swift Pork Co.*, 988 N.W.2d 340, 347 (Iowa 2023) (cleaned up). "The plaintiff need only demonstrate termination occurred under circumstances giving rise to an inference of discrimination and his or her status as a member of a protected class was a determining factor in the decision to terminate employment." *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 13 (Iowa 2009) (cleaned up).

## I.    Comparator Evidence Instruction

Our supreme court has recently provided guidance on the use of comparator evidence in discrimination claims at the summary-judgment stage. *See McClure v. E.I. du Pont de Nemours & Co.*, 23 N.W.3d 33, 46–47 (Iowa 2025); *Feeback*, 988 N.W.2d at 350–52. But at summary judgment, the court has adopted a different framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), to evaluate discrimination claims, modified "to align the summary judgment test with the mixed-motive causation standard and the same-decision defense at trial." *Feeback*, 988 N.W.2d at 347. That standard was rejected by the supreme court in *Hawkins* for purposes of instructing the jury at trial. 929 N.W.2d at 272.

Reeves was unable to provide direct evidence her age was a motivating factor in her termination. So she turned to evidence of disciplinary actions of comparable employees to prove the circumstances of her discharge raised an inference of discrimination. *See Feeback*, 988 N.W.2d at 347 (explaining what an employee must show to make a prima facie case of discrimination); *see also McClure*, 23 N.W.3d at 47.[1]

The court instructed the jury how to evaluate the comparator evidence offered at trial. The instruction provides:

> Ms. Reeves alleges that she was treated differently than other Costco employees. For you to consider Costco's treatment of any other Costco employee, Ms. Reeves must prove all of the following propositions:
>
> 1. The other employee held a position similar to Ms. Reeves'[s] position;
>
> 2. The other employee reported to the same supervisor as Ms. Reeves;
>
> 3. The other employee was subject to the same standards as Ms. Reeves; and
>
> 4. The employee's conduct was of comparable seriousness.
>
> If Ms. Reeves failed to prove one or more of these propositions regarding another employee, you may not consider that employee or Costco's treatment of him or her.

Reeves objected to the jury instruction, describing it as "duplicative and unnecessary." Reeves argues that to prove her discrimination claim, "she is not required to prove she was treated differently than other employees and

---

[1] In the past, the *Price Waterhouse* test was used in cases with direct or circumstantial evidence proving age was a factor in the employment decision, while the *McDonnell Douglas* test was used in indirect-evidence cases. *See Vaughan*, 542 N.W.2d at 538.

therefore the district court improperly submitted [the jury instruction] to the jury." And yet, the essence of her argument of age discrimination was that she was treated differently than younger employees.

Considering the jury instructions as a whole, we do not find the challenged instruction duplicative of any other. None of the other instructions provide direction to the jury on how to consider the comparator employees and how the evidence might prove discrimination. And the inferences instruction Reeves proposed suggests the inference of discriminatory motive based on "similarly situated" employees without explaining what that means. The district court's inclusion of a comparator evidence instruction was not legal error. *Cf. Hunter*, ___ N.W.3d at ____, 2026 WL 1108661, at *10–11, *17 (rejecting the given comparator instruction as "too restrictive" but not disapproving generally of an instruction when "a good deal of comparator evidence" was introduced).

Alternatively, Reeves challenges the first element of the jury instruction—the comparator employee must hold a similar position—as "not supported by relevant law." Rather than the comparators holding a similar position, Reeves argues the question is whether the employees are held to the same standards—which is covered in the third element. But all employees were subject to the general employee standards; Reeves was at a manager level, so employees "similarly situated in all relevant respects" would be those entrusted to the leadership role she inhabited and its additional expectations. *See McClure*, 23 N.W.3d at 46; *cf. McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 600 (8th Cir. 2020) (finding those at different rank levels within a job type with different job duties "are not similarly situated in all relevant respects and so are not comparators").

The court's formulation of the instruction generally reflects case law from recent age-discrimination cases. *See Feeback*, 988 N.W.2d at 346–48; *McClure*, 23 N.W.3d at 45–48. In *Feeback*, the court noted that determining if someone is similarly situated for comparison purposes is "rigorous" and cited to an Eighth Circuit case requiring the employees "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." 988 N.W.2d at 350 (citations omitted). Any comparator must be "similarly situated in all relevant respects" and "who committed an offense of comparable seriousness but did not suffer the same adverse employment action." *McClure*, 23 N.W.3d at 46 (cleaned up).

The instruction given did not materially misstate the law or mislead the jury; rather it was necessary information for the jury in deciding this case.

## II.    Trial Motion to Amend Petition

After opening arguments, Reeves verbally moved to amend her petition to conform to the evidence, seeking to add a claim for breach of contract. The district court directed her to file a motion to amend to conform after the evidence was in. She filed the motion and a brief in support on the sixth day of trial, and the court denied the motion. On appeal, Reeves argues she could not have brought the contract claim earlier—before Costco admitted the existence of an employment contract. She argues no additional discovery would have been required and the amendment would not have substantially changed the issues or prejudiced Costco.

"Iowa Rule of Civil Procedure 1.457 allows a party to amend the pleadings to conform to the evidence presented at trial.[2] The issues to be tried are established either by the initial pleadings or by the consent of the parties, either expressly or impliedly." *Meincke v. Nw. Bank & Tr. Co.*, 756 N.W.2d 223, 229 (Iowa 2008) (citation omitted). "Allowance of an amendment to a pleading is the rule and denial the exception, although an amendment is not permissible which will substantially change the issue." *Allison-Kesley Ag Ctr., Inc. v. Hildebrand*, 485 N.W.2d 841, 845 (Iowa 1992) (citation omitted); *see In re Est. of Workman*, 903 N.W.2d 170, 178 (Iowa 2017).

"[W]hen the movant seeks to amend based upon trial testimony that the movant knew or should have known about beforehand, amendments that might well have otherwise been allowed earlier in the course of the proceedings may properly be denied by the district court judge." *Allison-Kesley*, 485 N.W.2d at 846; *accord Workman*, 903 N.W.2d at 178–79. The "trial court has considerable discretion in ruling on a motion for leave to amend, and we will reverse only when a clear abuse of discretion is shown." *Allison-Kesley*, 485 N.W.2d at 846.

Reeves asserts she did not know she had an employment contract with Costco, assuming it was at-will employment, and claiming the employee

---

[2] Rule 1.457 provides, in relevant part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . . If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice that party in maintaining the action or defense upon the merits.

handbook was unclear whether it altered the at-will status. But the employee agreement, which Reeves signed every few years during her employment and which she had a copy of throughout the litigation, includes a termination provision specifying:

> We reserve the right to terminate your employment for good and sufficient cause as defined by Costco. This includes, but is not limited to, the "Causes for Termination" listed in Section 11.3. No prior Counseling Notice is required. In addition, we reserve the right to terminate employment at any time during the 90-day Probationary period without cause and without notice. No prior Counseling Notice is required.
>
> Employment may also be terminated for repeated violations of policies listed under Standards of Conduct and Discipline in Section 11.0. Prior to terminating the employment of an individual who has been employed two or more years, the circumstances must be reviewed with a Senior Vice President or above. Prior to terminating the employment of an individual who has been employed five or more years, the circumstances must be reviewed with an Executive Vice President or above.

The clause is rather clear that probationary employment is at-will, with the right to terminate "without cause and without notice," contrasting with the permanent employment requiring "good and sufficient cause." More, the requirement for termination to be reviewed by an executive vice president or above for employees with at least five-years' tenure also strongly indicates this is not at-will employment. Reeves had years of discovery and depositions of various levels of Costco management to pose a question of contracted versus at-will employment based on the provision she had before her.

We find Reeves knew or should have known her employment was under contract rather than at-will, should have known of her potential contract claim, and could have moved to amend her petition in the two years of litigation. Independent of the procedural issue, we are skeptical Reeves generated a fact question on all elements of a breach-of-contract claim; but

we need not resolve that question to decide the appeal. The district court did not abuse its discretion in denying Reeves's motion for leave to amend to add the breach of contract claim at trial.

**AFFIRMED.**